# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.F. and J.F.**

**No. 18-0454** (Gilmer County 16-JA-10 and 16-JA-11)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner C.J., the children's maternal grandmother, by counsel Daniel R. Grindo, appeals the Circuit Court of Gilmer County's April 13, 2018, order granting permanent placement of D.F. and J.F. to the foster parents.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to properly consider the grandparent preference and the best interests of the children, and in terminating her visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, Child Protective Services ("CPS") opened a case with the mother and father of J.F. and D.F. to address concerns with the parents' caregiving capabilities. CPS implemented a safety plan with services to address its concerns, and the children were placed in the care of their maternal aunt. At some point, the DHHR filed an abuse and neglect petition against the parents and alleged that they failed to comply with the safety plan.[2] The parents were

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Another child, A.G., was involved in the proceedings below. J.G. is the father of A.G. A child abuse and neglect petition was also filed against him during the proceedings below. J.G. was granted an improvement period, which he successfully completed, and the petition against him was dismissed. A.G. was placed in his care and the permanency plan for the child is to

(continued . . .)

adjudicated as abusing parents in August of 2016 and were granted post-adjudicatory improvement periods.

In November of 2016, the children were removed from the care of their maternal aunt due to domestic violence in the home and were placed in a non-adoptive foster home. Around February of 2017, the children began respite visits with the current foster parents and were completely transitioned into the home by April of 2017. During the course of the proceedings, the children's maternal great-grandmother, C.R., inquired into gaining placement of the children and a home study was initiated. The multi-disciplinary team discussed placement with the great-grandmother, but expressed concerns due to her advanced age of seventy-five.

A final dispositional hearing was held in August of 2017, wherein the circuit court terminated the parents' parental rights.[3] Thereafter, the great-grandmother and petitioner, the maternal grandmother of the children, filed a joint motion to intervene, seeking placement of the children.[4] The circuit court held a hearing on the matter in September of 2017, wherein it granted the motion to intervene, but denied placement of the children with petitioner and the great-grandmother at that time. However, petitioner and the great-grandmother were granted supervised visitation.

A home study of the great-grandmother's home was completed later in August of 2017. The evaluator found that the great-grandmother's home was appropriate, but expressed concerns regarding the great-grandmother's ability to provide long-term care to the children due to her advanced age. The great-grandmother obtained a medical waiver from her physician stating that she was physically capable of caring for the children and her home study was eventually approved based on the waiver, with the understanding that petitioner would be available to assist the great-grandmother in taking care of the children. At that time, petitioner lived in Ohio and was a full-time student, but reported that she planned to move into the great-grandmother's home in January of 2018. The foster parents filed a motion to intervene in December of 2017, which the circuit court granted. In January of 2018, petitioner moved into the great-grandmother's home and another home study was performed and approved shortly thereafter.

The circuit court held a permanency hearing for the children over the course of two days in February of 2018 and March of 2018. The DHHR recommended that placement of the children remain with the foster parents due to their strong bond, the fact that the children had been in their care for eleven months, the great-grandmother's age and health, and petitioner's

---

remain in his care. As such, petitioner states that she does not request placement of A.G. and she is not at issue on appeal.

[3]The mother appealed the termination of her parental rights to the children. This Court affirmed the circuit court's termination by memorandum decision. *See In re A.G.*, No. 17-0875, 2018 WL 1256610, (W.Va. March 12, 2018)(memorandum decision).

[4]While the great-grandmother and petitioner filed a joint motion to intervene during the proceedings below, the great-grandmother did not appeal the circuit court's final order.

alleged lack of interest in gaining placement of the children. Petitioner testified that she was never contacted regarding placement of the children. Nevertheless, petitioner participated in visits with the children until they were stopped by the DHHR due to not having a court order. Petitioner reported that she then moved the circuit court to grant her visitation, which was approved, and that she consistently participated in visitation since that time. Petitioner stated that she intervened in the case once she determined that the mother's parental rights were going to be terminated and that, contrary to the DHHR's assertions, she did express an interest in gaining placement of the children. Following testimony, the guardian proffered that the children should remain with the foster parents. The guardian stated that, contrary to petitioner's testimony, she had been asked whether she was interested in placement of the children, but declined to participate in a home study because she was in school and unable to care for the children at that time.

After hearing evidence, the circuit court found that the best interests of the children were to remain in their placement with the foster parents. The circuit court opined that petitioner only became interested in placement of the children when it became apparent that placement with the great-grandmother was problematic due to her age. The children had been placed with the foster parents for eleven months and demonstrated a significant bond with them. As such, the circuit court granted permanent placement of the children to the foster parents and terminated visitation with petitioner. It is from the April 13, 2018, order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in failing to consider the "grandparent preference" set forth in West Virginia Code § 49-4-114(a)(3). According to petitioner, the circuit court's final order is devoid of any consideration of this statutory preference for permanent placement of children with grandparents. Petitioner argues that the circuit court failed to consider that the DHHR did not comply with the statute by failing to make inquiry into whether she desired placement of the children, failing to consider her approved home study, and recommending that placement of the children remain with the foster parents.

She further alleges that the circuit court failed to consider the best interests of the children. We disagree.

West Virginia Code § 49-4-114(a)(3) states that

[f]or purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

However, we have also noted that "[t]he preference is just that – a preference. It is not absolute." *See In re K.E.*, 240 W.Va. 220, --, 809 S.E.2d 531, 536 (2018). In fact, "[t]he grandparent preference must be considered in conjunction with [this Court's] long standing jurisprudence that 'the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W.Va. 699, 703, 715 S.E.2d 397, 401 (2011) (quoting Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996)). Accordingly,

[b]y specifying in West Virginia Code § 49-3-1(a) [now West Virginia Code § 49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the [DHHR] and circuit courts of the best interests of the child, given all circumstances of the case.

*In re K.E.*, 240 W.Va. at --, 809 S.E.2d at 533, Syl. Pt. 3 (quoting Syl. Pt. 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005)).

Contrary to petitioner's assertion, the circuit court did not fail to consider the grandparent preference set forth in West Virginia Code § 49-4-114(a)(3). While the order contains sparse findings, the transcript of the permanency hearing is replete with the circuit court's consideration of placement of the children with petitioner and the foster parents. The circuit court found that petitioner only became interested in placement of the children once the DHHR raised concerns regarding the great-grandmother's advanced age and ability to care for the children. The guardian proffered that petitioner was contacted regarding placement of the children but declined to participate in a home study at that time due to attending school. Petitioner did not take steps to gain placement of the children until it was clear the parents' parental rights would be terminated in August of 2017, nearly a year after the children were removed from their parents' care. Due to petitioner's inaction, the children were moved to a foster home and remained there throughout the case, enabling them to develop a strong bond with the foster parents.

Based on the record, we find that the DHHR complied with the process set forth in West Virginia Code § 49-4-114(a)(3) by identifying petitioner, who declined to participate in a home

study at that time. Once petitioner expressed an interest in placement, a home study was performed and she was approved for placement. The record demonstrated that, despite petitioner's approved home study, the best interests of the children necessitated permanent placement with the foster parents. The home study evaluator testified that she approved petitioner's home study by giving the great-grandmother an age waiver, simply because they were relatives. She testified that "we want more relatives now" and repeatedly confirmed that the approved home study was based upon petitioner's status as a relative and the great-grandmother's medical waiver. Her testimony did not demonstrate clear consideration of the children's best interests. In contrast, several other witnesses testified that the children demonstrated a strong bond with the foster parents and did not seem to have a strong bond with the grandparents. The children called their foster parents "mommy and daddy" and were reluctant to leave them for visits with petitioner. After visits with petitioner, they were always ready to return home to their foster parents. Due to this strong bond, the DHHR and the guardian recommended that placement of the children remain with the foster parents.

Although petitioner was approved as an appropriate placement for the children, the evidence as a whole indicated that their best interests necessitated placement with the foster parents. We have previously held that "[t]he [grandparent preference] statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." *Napoleon S.*, 217 W.Va. at 256, 617 S.E.2d at 803, Syl. Pt. 4, in part. After much consideration on the record, the circuit court properly found that the testimony at the permanency hearing demonstrated that placement with petitioner was not in the children's best interest. Accordingly, we find that the circuit court did not err in denying the same.

Petitioner also argues that the circuit court erred in terminating her visitation with the children. According to petitioner, maintaining a relationship with her is in the children's best interests. We find petitioner's argument to be without merit.

We have previously held that

> [t]he Grandparent Visitation Act, W.Va. Code § 48-10-101 et seq., is the exclusive means through which a grandparent may seek visitation with a grandchild. The best interests of the child are expressly incorporated into the Grandparent Visitation Act in W.Va. Code §§ 48-10-101, 48-10-501, and 48-10-502. Pursuant to W.Va. Code § 48-10-902, the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

*In re Hunter H.*, 231 W.Va. at 118, 744 S.E.2d at 229, Syl. Pts. 1-3. Because post-adoption visitation between a grandparent and a child is not contemplated by the Grandparent Visitation Act, the circuit court did not err in denying petitioner the same. In light of the anticipated adoption by a non-relative, we find that she is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 13, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

6