STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re* R.S. and G.S.-1

No. 19-0258 (Mingo County 17-JA-67 and 17-JA-86)

FILED

September 13, 2019

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners S.S. and G.S.-2, by counsel Justin J. Marcum, appeal the Circuit Court of Mingo County's February 26, 2019, order denying their motion to intervene.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Diana Carter Wiedel, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioners argue that the circuit court erred in denying their motions to intervene.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioners are the paternal grandparents of R.S. and G.S.-1. On September 30, 2016, the DHHR filed an abuse and neglect petition against the parents alleging that G.S.-1 tested positive for illegal substances at birth.[2] In January of 2017, petitioners contacted the DHHR and complained that G.S.-1 was in foster care and advocated for the child to be returned to the father's custody because, in their opinion, the father had done nothing wrong. When the DHHR worker inquired whether they desired placement of the child, petitioners expressed to the DHHR that they

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and one of the petitioners share the same initials, they will be referred to as G.S.-1 and G.S.-2, respectively, throughout the memorandum decision.

[2]Following his removal from the parents' custody, G.S.-1 was initially placed in the care of his maternal grandfather and later placed in foster care. R.S. was placed in a foster home shortly after he was born in June of 2017. The parents' parental rights were subsequently terminated.

1

were not interested in becoming a placement for G.S.-1. After first contacting the DHHR in January of 2017, petitioner S.S. called the DHHR several more times to "complain about the handling of the case," but never requested placement of the child. On June 21, 2018, petitioners filed a pro se motion to intervene in the instant proceedings. The motion was later denied.

After hiring counsel, petitioners filed a second motion to intervene in the matter along with a brief in support. Petitioners complained that they were never considered as a placement for the children. They also noted that petitioner G.S.-2 received a pardon "for the miniscule criminal history that the [DHHR] continues to hang [its] hat on" as a reason for denying custody. The DHHR and the guardian argued against placement with petitioners because G.S.-1 had been in his foster placement for over a year and a half and R.S. had been in his foster placement for approximately one year, since immediately after he was born. Additionally, the DHHR and the guardian informed the circuit court that petitioner G.S.-2 had prior criminal convictions for aggravated assault, cruelty to children, terroristic threats, interference with government property, aggravated stalking, and simple assault. The DHHR and the guardian concluded that petitioners were not an appropriate placement for the children and that the best interests of the children necessitated that they remain with their respective foster families. On September 12, 2018, the circuit court held a hearing on the motion to intervene and addressed petitioners' request for placement of the children. In its October 25, 2018, order denying petitioners' motion to intervene, the court found that petitioners had knowledge of the abuse and neglect proceedings "throughout their entirety" and failed to "intervene or request to be a placement" for the children for approximately two years. The circuit court also noted that petitioner G.S.-2 had "numerous criminal charges/convictions . . . some of which were crimes against children."

On November 16, 2018, petitioners filed a "Motion for Consideration of Alternative Placement that Was Not Considered by the Court and the Petitioners." On November 27, 2018, a Child Protective Services ("CPS") worker signed an affidavit stating that she had knowledge that petitioner S.S. previously indicated that she was not interested in placement of the children, and, therefore, the DHHR "took no action to look into her background or to place the children" with her. The CPS worker also stated that petitioner S.S. would be an "inappropriate placement for any child" because she continued to reside with petitioner, G.S.-2, who had a criminal history involving aggravated stalking, family violence, and cruelty to children. She also explained that "the fact that [petitioner G.S.-2] received a pardon for these crimes more than [ten] years later, would not change the opinion of the [DHHR] that he is not an appropriate person to be around children." The circuit court held a hearing on January 16, 2019, and denied petitioners' motion for reconsideration and their request for placement of the children in its February 26, 2019, order.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

---

[3]According to respondents, the permanency plan for the children is adoption in their respective foster homes.

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioners argue that the circuit court erred in denying their motions to intervene. In support, petitioners contend that they demonstrated a willingness to adopt the children, but the DHHR "failed to ever consider placement/adoption of the infant children with the [p]etitioners." Further, petitioners assert that they were "entitled to intervene in this matter and denied a hearing thereto." We do not find petitioners' argument to be persuasive. West Virginia Code § 49-4-114(a)(3) provides as follows:

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

The parties contest whether petitioners were considered for placement of the children. However, the record indicates that a DHHR worker asked petitioners if they were interested in placement of G.S.-1 in January of 2017, but petitioners declined and stated that the child should be returned to his father. The record further shows that the abuse and neglect proceedings in the instant matter were initiated in September of 2016 and petitioners were aware of the proceedings. Petitioners were in contact with the DHHR beginning in January of 2017, however, it was not until June of 2018 that petitioners took any action to intervene in the proceedings. By that time, both children had been in foster care for nearly their entire lives and had bonded with their respective foster parents.

In discussing the grandparent preference, set forth above, this Court has noted that "[t]he preference is just that—a preference. It is not absolute . . . the child's best interest remains paramount." *In re K.E.,* 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Simply stated, "[t]he grandparent preference must be considered in conjunction with our long standing jurisprudence that 'the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (quoting syl. pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996)).

3

Although petitioners argue that petitioner G.S.-2 was pardoned for his previous criminal activity, placement with petitioners is not in the children's best interests. During the proceedings below, the DHHR and the guardian argued against placing the children with petitioners due to petitioners' initial disinterest in obtaining custody of G.S.-1. The DHHR and the guardian recommended that the children remain with their respective foster families. The record indicates that the children had been in their respective foster placements for nearly their entire lives and were in need of permanency and stability in the form of an adoptive home. The children were placed in foster homes that could accommodate their medical needs and facilitate visits between the siblings. Based on this evidence, it is clear that placement with petitioners would have been contrary to the children's best interests.

Additionally, petitioners argue that they were denied a hearing on their motion to intervene, West Virginia Code § 49-4-601(h) provides that "parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard." Because petitioners did not have custodial rights to the children, nor were they relative caregivers, they were not entitled to be heard under this statute. However, the record shows that the arguments on petitioners' motion to intervene were fully briefed and that the circuit court held a hearing on their motion to intervene and then held another hearing on their motion for reconsideration. Based on the evidence discussed, we find no error in the circuit court's denial of petitioners' motion to intervene.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 26, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison