# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.N. and I.N. Jr.**

**No. 19-1112** (Randolph County 18-JA-110 and 18-JA-111)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner R.N., the children's paternal grandfather, by counsel David C. Fuellhart, appeals the Circuit Court of Randolph County's October 30, 2019, order granting permanent placement of L.N. and I.N. Jr. with the foster parents.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him placement of the children, failing to require the DHHR to conduct a home study of his residence, and denying him visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed an abuse and neglect petition against the parents after receiving a referral that the children's father was selling controlled substances out of petitioner's home, where the children were also residing. The petition alleged that I.N. Jr. saw his father sell drugs out of the home and said that petitioner was aware the father did "bad things at night to get money for the family." Further, the petition alleged the DHHR found methamphetamine underneath a futon on which the children were sitting. The petition also alleged that petitioner provided care for the children and that they were exposed to abusive and neglectful situations in his home. Despite the father's conduct in the home, petitioner denied knowledge of the father's drug activities. The children remained with petitioner for two weeks after the petition was filed, until the DHHR discovered that petitioner's parental rights to his three children—

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

including L.N. and I.N. Jr.'s father—had been terminated twenty years earlier. As a result of this discovery, the children were taken out of petitioner's home and placed into foster care. The parents were adjudicated as abusing parents in October of 2018 and were granted post-adjudicatory improvement periods.

In October of 2018, petitioner began requesting visitation with the children, to which the DHHR and guardian objected, due to petitioner's prior termination of parental rights. Despite the concerns, the circuit court granted petitioner two supervised visits with the children around the Thanksgiving and Christmas holidays. In light of the visits, petitioner was drug screened and tested positive for marijuana. Additionally, the guardian alleged that petitioner had inappropriate conversations with the children about the case during the visits, including promises that the children would live with him.

Final dispositional hearings were held in April and August of 2019, wherein the circuit court terminated the father's and mother's parental rights, respectively. After the termination of the father's parental rights, petitioner asked for placement of the children, or in the alternative, visitation. The DHHR and guardian continued to object to petitioner's request due to the prior termination of his parental rights. The circuit court appointed petitioner an attorney in June of 2019.

The circuit court held a permanency hearing for the children in September of 2019 wherein petitioner requested placement, or in the alternative, visitation with the children. The DHHR recommended that placement of the children remain with the foster parents due to the strong bond the children had with them, the fact that the children had been in their care for several months, petitioner's prior termination of parental rights, and petitioner's continued substance abuse. A DHHR caseworker testified that petitioner had stipulated to abusing and neglecting his own children in 1999, due to substance abuse that affected his ability to parent. The caseworker further testified that petitioner's stipulation eventually led to the termination of his parental rights to his three children and that DHHR policy prohibited the placement of the children with petitioner. The DHHR also presented evidence that the children's parents continued to visit petitioner's home after their rights to the children had been terminated. Finally, a CPS worker testified that it had substantiated an allegation that petitioner prostituted his then fourteen-year-old daughter to a drug dealer to satisfy his drug debt in 1999. Petitioner denied the allegations and testified that he was never criminally charged. Petitioner's daughter testified and denied the allegations, for the first time ever, at the hearing. Additionally, petitioner admitted that he had been using marijuana for the last forty-one years, including when visiting the children in December of 2018, and that he continued to use marijuana until the last month before the hearing. Nevertheless, petitioner testified that he promised to stop using if it meant that he would receive placement of the children. In addition to marijuana, the DHHR presented evidence that petitioner tested positive for Subutex in July of 2019. Petitioner denied using Subutex or having any knowledge of the controlled substance.

Based upon the evidence, the circuit court found that it was in the best interests of the children to remain in their placement with the foster parents. The circuit court found that drug use was the basis for petitioner's previous termination of parental rights and that petitioner continued his drug addiction "for the next [twenty] years thereafter." The circuit court also found that the

DHHR's policy prohibited placement of any child in petitioner's care and that the policy was "well-founded and consistent with the best interest of the children." In short, the circuit court found that petitioner's home was "not appropriate for placement of the children." Additionally, the circuit court found that the children's pre-adoptive family was best suited to make decisions as to future visitation and left any decision of visitation at their sole discretion. As such, the circuit court granted permanent placement of the children to the foster parents and left visitation in their discretion. It is from the October 30, 2019, order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred by denying him placement of the children and by failing to require the DHHR to conduct a home study of his residence. According to petitioner, the record is insufficient to overcome the statutory presumption that placement of the children with him was in the children's best interests. Petitioner argues that the children lived with him for two years, he visited the children "every day of their lives," and the children were only removed "because of old allegations against the [p]etitioner—the same allegations that were denied by the alleged victim at the hearing." Additionally, petitioner argues the circuit court should have required the DHHR to conduct a home study of his residence when he requested placement of the children. We disagree.

West Virginia Code § 49-4-114(a)(3) states that

> [f]or purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

However, we have also noted that "[t]he preference is just that—a preference. It is not absolute." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). In fact, "[t]he grandparent preference must be considered in conjunction with [this Court's] long standing jurisprudence that 'the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (citation omitted). Accordingly,

> [b]y specifying in West Virginia Code § [ 49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the [DHHR] and circuit courts of the best interests of the child, given all circumstances of the case.

*In re K.E.*, 240 W. Va. at 220, 809 S.E.2d at 533, syl. pt. 3 (citation omitted).

Contrary to petitioner's assertion, the circuit court did not err in finding that the DHHR overcame the statutory presumption of placing the children with him. Notably, petitioner contends that the only reason the children were removed from his home was because he was "accused of allowing his minor daughter to have sex with a man in exchange for controlled substances," an accusation that he denies. Petitioner's contention that this was the sole reason that he was denied placement of the children both minimizes the severity of the substantiated abuse and neglect of other children and ignores several other findings that the circuit court articulated in its order. In the order, the circuit court found that petitioner was "adjudicated twenty years ago upon his admission to drug use affecting his ability to parent," his "parental rights were terminated," and his "drug addiction continued for the next [twenty] years thereafter." Petitioner does not dispute any of these findings. In fact, petitioner readily admitted at the hearing that he had used marijuana for the last forty-one years, tested positive when he visited the children, and only stopped using a month prior to the permanency hearing. Additionally, the circuit court found that petitioner had a "prior substantiation, adjudication, and termination of parental rights" and that the DHHR has a policy which "prohibit[ed] placement of any child in [petitioner]'s care." The circuit court found that policy to be "well-founded and consistent with the best interest of the children." Further, the circuit court found that two of petitioner's children were in and out of his home, despite the fact that both had their own parental rights terminated. As such, the circuit court had ample evidence to support its findings and conclusion that petitioner's home was "not appropriate for placement of the children."

Next, petitioner argues the circuit court erred in not ordering the DHHR to perform a home study of his residence. On this issue, we have previously held that

> [w]hile the grandparent preference statute . . . places a mandatory duty on the West Virginia Department of Health and Human Resources to complete a home study before a child may be placed for adoption with an interested grandparent, "the department shall first consider the [grandparent's] suitability and willingness . . . to adopt the child." There is no statutory requirement that a home study be completed in the event that the interested grandparent is found to be an unsuitable adoptive placement and that placement with such grandparent is not in the best interests of the child.

Syl. Pt. 10, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015). Here, the DHHR found that petitioner was an unsuitable placement for the children due to his prior termination of parental rights and continued substance abuse. Therefore, the DHHR was not required to conduct a home study as placement of the children with petitioner was not in the children's best interests.

Although petitioner was initially given temporary placement for the children, the evidence as a whole indicated that the best interests of the children necessitated permanent placement with the foster parents. We have previously held that "[t]he [grandparent preference] statute contemplates that placement with grandparents is presumptively in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child." *Napoleon S.*, 217 W. Va. at 256, 617 S.E.2d at 803, syl. pt. 4, in part. After much consideration on the record, the circuit court properly found that the evidence at the permanency hearing demonstrated that placement with petitioner was not in the children's best interest. Accordingly, we find that the circuit court did not err in denying the same.

Finally, petitioner argues that the circuit court erred by denying him visitation with the children. According to petitioner, maintaining a relationship with him is in the children's best interests. We find petitioner's argument to be without merit.

We have previously held that

> [p]ursuant to W.Va. Code § 48-10-902 [2001], the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

Syl. Pt. 3, *In re Hunter H.*, 231 W. Va. at 118, 744 S.E.2d at 229. Because post-adoption visitation between a grandparent and a child is not contemplated by the Grandparent Visitation Act, the circuit court did not err in leaving visitation at the sole discretion of the children's foster parents. In light of the anticipated adoption by a non-relative, we find that he is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5