715 S.E.2d 397

**In re HUNTER H.**

Nos. 35750, 35751.

Supreme Court of Appeals of
West Virginia.

Submitted April 26, 2011.

Decided June 14, 2011.

Lisa M. Hawrot, Esquire, Jacob A. Manning, Esquire, Dinsmore & Shohl, LLP, Wheeling, WV, for Appellants.

Robert G. McCoid, Esquire, McCamic, Sacco, Pizzuti & McCoid, PLLC, Wheeling, WV, for Appellee.

Darrell V. McGraw, Jr., Attorney General, Katherine M. Bond, Assistant Attorney General, for Appellee.

Joseph J. Moses, Esquire, Wheeling, WV, Guardian ad Litem.

PER CURIAM:

This is a consolidated appeal from the Circuit Court of Ohio County wherein the circuit court ordered that the minor child, Hunter H.[1], be permanently placed with his maternal grandmother, rather than his foster parents, whom the child had lived with for three years and who were seeking to adopt him.

The appellants, the foster parents and Hunter H.'s guardian ad litem, appeal from the circuit court's order and raise three main arguments: (1) the circuit court erred by giving improper weight to the statutory and Department of Health and Human Resources ("DHHR") policy preference for grandparent adoption, rather than focusing its analysis on the best interests of the child; (2) the circuit court's findings of fact were clearly erroneous and implausible in light of the entire evidentiary record; and (3) the circuit court erred when it failed to grant the foster parents' motion to stay and erred by ordering Hunter H. to be immediately transferred from his foster parents to his grandmother without a gradual transition period.

After a thorough review of this matter, we agree with the appellants that the circuit court erred by giving improper weight to the grandparent preference, rather than focusing its analysis on the best interests of the child. We therefore reverse the circuit court's ruling and remand for entry of an order requiring that Hunter be placed with his foster parents for adoption.

## I.

### Facts & Background

Hunter H. was born on March 6, 2006. When Hunter was approximately 17 months old, his maternal grandmother, Donna D. ("Grandmother Donna" or "grandmother") contacted the DHHR because she feared for Hunter's safety after discovering that his biological parents were using crack cocaine.[2] On August 16, 2007, Grandmother Donna agreed to take custody of Hunter until a safety plan could be put into place. The DHHR subsequently received information that Grandmother Donna's husband, Frank B., regularly used marijuana and alcohol and had difficulty controlling his behavior. Due to these concerns, the DHHR sought to remove Hunter from Grandmother Donna's house and filed an abuse and neglect petition on behalf of Hunter, naming Hunter's biological parents, as well as Grandmother Donna and Frank B. as respondents. The child case plan prepared by Hunter's child protective services worker on September 22, 2009, described the conditions that existed in Grandmother Donna's residence prior to Hunter's removal:

> Hunter H. was staying with his maternal grandmother at that time as the result of a safety plan. Due to the illegal drug use and domestic violence between Amanda L. and Robert H. (Hunter's natural parents) and the criminal history and drug use by paternal grandfather Frank B., it was determined to be in the best interest of Hunter H. that he [sic] removed from the

---

1. We adhere to our usual practice in cases involving sensitive facts and refer to the parties by their first names and last initials only. *See In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

2. Hunter's biological parents, Amanda L. and Robert H., were addicted to crack cocaine and involved in other illegal activities, including writing bad checks, at the time the child was removed from their custody. Amanda L. also brought domestic violence charges against Robert H.

home. The actions of the caretakers put Hunter at high risk of harm.

Hunter was subsequently removed from Grandmother Donna's residence and placed with foster parents, Joyce and Jerry W., where he resided continuously from August 2007 through August 2010.

Three months after Hunter was removed, Grandmother Donna asked the DHHR to conduct a home study of her residence so that she could be considered as a permanent placement option for Hunter. This home study was denied in December 2007 because of Frank B.'s substance abuse problems and his erratic behavior. Grandmother Donna and Frank B. were dismissed as respondents from the abuse and neglect petition in May 2008 because they were not being considered as a permanent placement option for Hunter at that time.[3]

Due to a change in circumstance, Grandmother Donna's separation and impending divorce from Frank B.[4], the DHHR conducted a second home study of her residence in May 2009. Prior to this second home study, Grandmother Donna underwent a psychological evaluation with Dr. Fremouw, who concluded that she had "no strategy" for disciplining Hunter and that she had a "tendency to deny or avoid common problems." Despite these issues, Dr. Fremouw characterized her as "a loving grandmother who is committed to her grandchild," but also stated that she needed to learn more appropriate ways of disciplining young children other than "yelling" at them or "smacking" them.

The second home study of Grandmother Donna's residence was approved on July 28, 2009. Following this approved home study, the DHHR sought to permanently move Hunter from the foster parents house and place him with Grandmother Donna. Hunter's guardian ad litem raised a number of objections to this proposed move, stating that it was not in the child's best interest to be removed from a stable, loving environment. He noted that Hunter was thriving with his foster family, identified his foster parents as "mom" and "dad" and identified his foster parents' daughter as "sis." The guardian ad litem was also concerned that Grandmother Donna had not gone through an improvement period after being named as a respondent in the abuse and neglect petition. He stated, "I don't recall any case that any child was returned to a home of a respondent custodian" without the respondent completing an improvement period.[5] The guardian ad litem was also concerned with the possibility that Hunter's biological mother, who had relinquished her parental rights due to her drug problem, would be allowed to have contact with Hunter if he was moved to Grandmother Donna's house.

Despite these objections, the DHHR requested that Hunter be placed with Grandmother Donna following a multidisciplinary treatment team ("MDT") meeting on August 18, 2009. The foster parents filed a motion to intervene, which the circuit court granted. Following four days of testimony regarding Hunter's permanent placement, the circuit court ordered that Hunter "be immediately and permanently placed with his maternal grandmother, Ms. Donna D.," because she had a successful home study, was recommended for placement by the DHHR, and because of the statutory grandparent preference found in *W.Va.Code* § 49–3–1(a)(3) [2001]. The foster parents and guardian ad litem filed motions to stay this order, which the circuit court denied on August 12, 2010.[6]

---

3. The DHHR initially sought to reunite Hunter with his biological mother but she failed to abide by the terms of her improvement period and voluntarily relinquished her parental rights to the child. Hunter's biological father also voluntarily relinquished his parental rights to the child.

4. By May 2009, Grandmother Donna was no longer living with Frank B., and the two were officially divorced in July 2009.

5. Grandmother Donna enrolled in a parenting course, PRIDE (Parent Resource Information Development Education), after Hunter was removed from her custody, but she was never placed on an improvement period to address the specific issues that led to Hunter being removed from her custody.

6. Neither the foster parents, nor the guardian ad litem filed a motion to stay the circuit court's decision with the West Virginia Supreme Court of Appeals. We stated in *In re Scottie D.*, 185 W.Va. 191, 198, 406 S.E.2d 214, 221 (1991), that a guardian ad litem has the duty to exercise the

Following the denial of these motions to stay, Hunter was placed with Grandmother Donna. The foster parents and guardian ad litem appeal from the circuit court's order placing custody of Hunter with Grandmother Donna.

## II.

### Standard of Review

The standard of review that governs appeals in abuse and neglect cases is set forth in Syllabus Point 1 of *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). It states:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

## III.

### Discussion

The appellants assert that the circuit court erred by giving improper weight to the grandparent preference, rather than focusing its analysis on the best interests of the child. The Legislature adopted the grandparent preference to govern the adoption of children whose parents' parental rights have been terminated through abuse and neglect proceedings. *W.Va.Code* § 49-3-1(a)(3) [2001] states:

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once any such grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

The grandparent preference is also set forth in the DHHR's internal regulations, specifically DHHR Adoption Policy § 7.3 which states, in part:

A Grandparent or an adult relative with a positive home study certifying the home adoption must be given preference over the non-relative home even if the non-relative home has the appearance of a better placement choice.[7]

The grandparent preference must be considered in conjunction with our long standing jurisprudence that "the primary goal in cases involving abuse and neglect ... must be the health and welfare of the children." Syllabus Point 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). We have previously held that "in a contest involving the custody of an infant where there is no biological parent involved, the best interests of the child are the polar star by which the discretion of the court will be guided." Syl-

child's appellate rights if an appeal is deemed necessary:

It is well established that 'after judgment adverse to his ward, the guardian ad litem has the right to appeal and the duty to do so if it reasonably appears to be to the advantage of the minor[.]' *Robinson v. Gatch,* 85 Ohio App. 484, 487, 87 N.E.2d 904, 906 (1949). This is based upon the principle that a guardian ad

litem has a duty to represent the child(ren) to whom he or she has been appointed, as effectively as if the guardian ad litem were in a normal lawyer-client relationship.

7. For a detailed discussion of DHHR Adoption Policy § 7.3, see *Kristopher O. v. Mazzone,* 227 W.Va. 184, 706 S.E.2d 381 (2011).

labus Point 1, in part, *State v. McCoy*, 189 W.Va. 210, 429 S.E.2d 492 (1993). *Accord* Syllabus Point 5, in part, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In ... custody matters, we have traditionally held paramount the best interests of the child.").

■■■ This Court discussed the interplay between the grandparent preference and the overriding standard of the best interests of the child in *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005). Syllabus Points 4 and 5 of *Napoleon S.* provide guidance on how the grandparent preference and the best interests of the child analysis co-exist:

> *W.Va.Code* § 49–3–1(a) provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumably in the best interests of the child, and the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.

> By specifying in *W.Va.Code* § 49–3–1(a)(3) that the home study must show that the grandparents "would be suitable adoptive parents," *the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.*

(Emphasis added).

This Court again discussed the grandparent preference in *In re Elizabeth F.*, 225 W.Va. 780, 696 S.E.2d 296 (2010), and again came to the conclusion that the grandparent preference is not an absolute directive to place a child with a grandparent. *Elizabeth F.* involved an appeal following a permanency hearing in which the circuit court placed four minor children with their maternal grandparents based solely on the grandparent prefer-

ence. The circuit court stated that "[a]bsent the grandparent preference, the Court doubts that his decision would be the same." *Elizabeth F.*, 225 W.Va. at 784, 696 S.E.2d at 300. As in the present case, the guardian ad litem in *Elizabeth F.* argued that placing the children with their grandparents was not in the children's best interests and that the grandparent preference should not supercede the best interests of the children. This Court agreed with the guardian ad litem and held:

> [A]doption by a child's grandparents is permitted only if such adoptive placement serves the child's best interests. If, upon a thorough review of the entire record, the circuit court believes that a grandparental adoption is not in the subject child's best interests, it is not obligated to prefer the grandparents over another, alternative placement that does serve the child's best interests. *See* Syl. pts. 4 & 5, *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801. Because the circuit court accorded the grandparents an absolute preference in this case despite its expressed concerns about the propriety of such a placement, we reverse the circuit court's decision.

*Elizabeth F.* 225 W.Va. at 787, 696 S.E.2d at 303.

In the case *sub judice*, both the guardian ad litem and the only expert who testified before the circuit court concluded that it was in Hunter's best interests to remain with his foster family. After being removed from Grandmother Donna's house, Hunter lived with his foster parents for three years. Hunter's guardian ad litem said the child developed a strong bond with his foster family during this three-year period and was a happy, well-adjusted child who identified himself as a member of the foster family, calling his foster parents "mom" and "dad," and referring to his foster parents' daughter as "sis." Based on the bond that formed between Hunter and his foster family, and the stability it brought to the child's life, Hunter's guardian ad litem testified that it was in Hunter's best interests to remain with his foster family.

Multiple child case plans prepared by the DHHR support the guardian ad litem's position that the foster family created a stable, loving environment for Hunter. An April 16, 2009, child case plan states "Hunter is provided a loving and supportive home by this foster mother. He is growing and thriving as a result of this placement." Another child case plan, dated September 22, 2009, states "Hunter H. is a very healthy little boy who appears to be well adjusted, growing and thriving with no current special needs."

The only expert who offered an opinion during the permanency hearings testified that it was in Hunter's best interests to remain with his foster family. Psychologist Sandra Street was qualified as an expert in mental and behavioral health assessments, counseling, and child development. Ms. Street testified that the foster family created "a consistent, stable environment in which he (Hunter) has limits and reinforcement." She stressed the importance of a child having a constant caregiver and stated that removing a child from a stable environment could put the child in a crisis and cause the child to act out, despair or become withdrawn. Based on all of these factors, the expert psychologist concluded that:

> In my opinion, it's in Hunter's best interest to stay with the (foster family), where he has made an adjustment and he has been able to bond and be part of the family, which is extremely important at his age.

The circuit court's order placing Hunter with his grandmother includes a two-page "conclusion" section explaining its rationale for favoring Grandmother Donna over the foster parents. This explanation section does not mention the opinions of the expert psychologist or Hunter's guardian ad litem. Instead, the circuit court sets forth the following factors it relied upon in concluding that Hunter should be placed with his grandmother: (1) the DHHR's recommendation that Hunter be placed with Grandmother Donna; (2) the strong bond Grandmother Donna developed with Hunter through supervised visitation; (3) Dr. Fremouw's report stating that Grandmother Donna was a loving grandmother who was not a risk to commit neglectful behavior; (4) a successful home study approving Grandmother Donna's residence; and (5) the grandparent preference found in *W.Va.Code* § 49–3–1(a)(3) [2001].

A review of the entire evidentiary record reveals that the circuit court's "conclusion" omits many salient facts. For instance, the circuit court states that Hunter developed a "strong bond" with Grandmother Donna through the course of supervised visitations during the three years he lived with his foster family. The circuit court fails to mention the strong bond that Hunter developed with his foster family, fails to mention that Hunter referred to his foster parents as "mom" and "dad," and fails to mention that Hunter lived with his foster family for three years. While the circuit court correctly noted that Dr. Fremouw considered Grandmother Donna to be a loving grandmother who was not a risk to commit neglectful behavior, the court's conclusion omits Dr. Fremouw's finding that Grandmother Donna had no strategy for disciplining the child and that she had a "tendency to deny or avoid common problems." Grandmother Donna did have an approved home study, but that fact alone does not dictate what is in the best interests of this child according to Hunter's guardian ad litem. Grandmother Donna divorced Frank B. whose use of drugs and violent behavior were largely responsible for the earlier failed home study, but this Court has serious concern about taking a child from a stable environment, one where he bonded with his foster family for three years, and returning him to an environment where drug use and violent behavior occurred in the recent past.

When considering all of the equities in this case, including the grandparent preference found in *W.Va.Code* § 49–3–1(a)(3) [2001], we hold that it is in Hunter's best interests to be permanently placed with his foster parents. This Court has previously stated that "stability in a child's life is a major concern when formulating custody arrangements." *Snyder v. Scheerer,* 190 W.Va. 64, 72–73, 436 S.E.2d 299, 307–08 (1993). There is no dispute that the foster family created a stable, loving environment in which

Hunter was growing and thriving. Hunter was placed with his foster family when he was 17 months old and lived with them for three years. He was part of their family and both his guardian ad litem and the only expert witness who testified before the circuit court agreed that it was in his best interests to remain with this family. Even the DHHR, which recommended that he be placed with his grandmother, concluded that Hunter was "well adjusted, growing and thriving," while he was living with his foster family. Based on all of these factors, we find that the circuit court's order placing Hunter with his grandmother was clearly erroneous because it elevated the grandparent preference over the best interests of this child.

Finally, we note that the manner in which the circuit court transferred custody of Hunter from his foster family to his grandmother was inconsistent with our case law. The circuit court's August 5, 2010, order stated that Hunter should be "immediately" placed with his maternal grandmother. After living with his foster family for three years, Hunter was transferred to his grandmother on August 13, 2010, a mere eight days after the entry of the circuit court's order. In *Kristopher O. v. Mazzone*, 227 W.Va. 184, 706 S.E.2d 381, 391 (2011), this Court stated that "it has been long understood that the law governing child custody directs that a child's best interests are best served by a gradual transition to a new home." In Syllabus Point 3 of *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991), this Court explained the rationale behind the gradual transition policy:

> It is a traumatic experience for children to undergo sudden and dramatic changes in their permanent custodians. Lower courts in cases such as these should pro-

vide, whenever possible, for a gradual transition period, especially where young children are involved. Further, such gradual transition periods should be developed in a manner intended to foster the emotional adjustment of the children to this change and to maintain as much stability as possible in their lives.[8]

Upon remand, the circuit court shall set a hearing forthwith, bringing all the parties and their counsel together for a full hearing on the most effective means of gradually transitioning Hunter from Grandmother Donna to his foster family. The circuit court may also consider setting up a visitation schedule for Grandmother Donna during this hearing. We have previously held that "(a) child has a right to continued association with individuals with whom he has formed a close emotional bond ... provided that a determination is made that such continued contact is in the best interests of the child." Syllabus Point 11, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996). It is imperative for all of the parties involved to work together for the ultimate goal: providing Hunter with a stable, loving environment.

## IV.

### Conclusion

The circuit court's orders of August 5, 2010, and August 12, 2010, placing custody of Hunter H. with his grandmother are hereby reversed and this case is remanded for entry of an order gradually transitioning Hunter from his grandmother to his foster family.

Reversed and remanded.

---

8. This gradual transition policy has been reiterated by this Court on a number of previous occasions. *See In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009); *Napoleon S. v. Walker*, 217 W.Va. 254, 617 S.E.2d 801 (2005); *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003); *In re Jade E.G.*, 212 W.Va. 715, 575 S.E.2d 325 (2002); *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001); *In re Brian James D.*, 209 W.Va. 537, 550 S.E.2d 73 (2001); *In re Zachary William R.*, 203 W.Va. 616, 509 S.E.2d 897 (1998); *Matter of Taylor B.*, 201 W.Va. 60, 491 S.E.2d 607 (1997); *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996); *State ex rel. Virginia M. v. Eugene S.*, 197 W.Va. 456, 475 S.E.2d 548 (1996); *Weber v. Weber*, 193 W.Va. 551, 457 S.E.2d 488 (1995); *Michael Scott M. v. Victoria L.M.*, 192 W.Va. 678, 453 S.E.2d 661 (1994); *Feaster v. Feaster*, 192 W.Va. 337, 452 S.E.2d 428 (1994); *Robert Darrell O. v. Theresa Ann O.*, 192 W.Va. 461, 452 S.E.2d 919 (1994); *Alonzo v. Jacqueline F.*, 191 W.Va. 248, 445 S.E.2d 189 (1994); *Snyder v. Scheerer*, 190 W.Va. 64, 436 S.E.2d 299 (1993).