**FILED**

**May 6, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.C. and C.S.**

**No. 21-0470** (Morgan County 20-JA-38, 20-JA-39)

**MEMORANDUM DECISION**

Petitioner Grandfather, K.M.[1] ("Petitioner"), by counsel Stephanie E. Scales-Sherrin, appeals the circuit court's May 14, 2021, order denying his motion to reconsider the court's permanency order. In its permanency order, the circuit court found that Petitioner was not a placement option for the children because he was living in a homeless shelter. The circuit court noted that the permanency plan for the children was to remain "in their current foster placement [with plans for] adoption by the foster family." On appeal, Petitioner argues that the circuit court erred by failing to hold an evidentiary hearing on his motion to reconsider "to fully consider the factors in determining what placement is in the children's best interests and the statutory grandparent preference for permanency." The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The children's guardian ad litem, Victoria G. Camardi ("GAL"), filed a response on behalf of the children in support of the circuit court's order.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case concerns the permanency plan for two children, A.C. and C.S. In September of 2020, the DHHR filed a petition alleging abuse and neglect by the children's mother after she tested positive for drugs at the time of C.S.'s birth.[2] The children were

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials to identify the parties. *See, e.g.*, *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] A.C. was three years old when the petition was filed; C.S. was a newborn infant.

1

placed in the foster home of L.M.[3] in September of 2020.  On December 7, 2020, the parents' parental rights to A.C. and C.S. were involuntarily terminated.  On December 30, 2020, Petitioner filed a motion to intervene, a motion for a home study, and a motion for grandparent visitation.  The circuit court granted these three motions on January 15, 2021.

The DHHR submitted an update to the circuit court on January 21, 2021.  The update informed the court that a multi-disciplinary team meeting ("MDT") was held on January 6, 2021.  During this MDT, Petitioner stated that he would like to adopt the children.  However, Petitioner reported that he 1) was living in a homeless shelter, 2) thought he could find housing within four to six weeks, and 3) had a criminal history.[4]  The DHHR's update informed the court that it could not perform a home study because Petitioner was living in a homeless shelter.

The circuit court held a permanency hearing on January 22, 2021.  The DHHR and GAL both asserted that the permanency plan should be continued placement with L.M. with plans for adoption by her.  The circuit court asked Petitioner's counsel why she requested a home study when Petitioner was living in a homeless shelter.  Counsel explained that Petitioner hoped to secure a residence in the near future.  The circuit court had the following exchange with Petitioner's counsel:

> Circuit Court: I mean, if we're supposed to decide permanency today and the permanency plan[,] the only one that's the logical plan based on the information I have from the history of this case right now is with the current foster parent [L.M.], I mean, I don't understand how I can even contemplate the grandfather's request if he's living at the [homeless shelter].

---

[3] L.M. was, at one time, the children's maternal aunt.  She is the ex-wife of Petitioner Grandfather's son. She and her former husband were divorced before the children were placed with her in September of 2020.  In Petitioner's brief to this Court, he asserts that "there was and continues to be no legal or biological relationship between the children and [L.M.]."

[4] The nature of this criminal history is unclear.  During the subsequent circuit court hearing, the DHHR stated that during the MDT, Petitioner said that he had a felony that occurred "a long time ago."  This is the only information regarding Petitioner's criminal history that has been adduced in this matter.

Petitioner's Counsel: I understand, Your Honor, that's certainly an issue and when the motions were filed it was my understanding that he was going to be able to secure a residence sooner than later. He's reporting to me today he's still attempting to do so. If nothing else, I would ask that we set an MDT because if he's not going to have a residence in the near future obviously permanency with him is not going to be an issue before the Court but I do think at a minimum we would then ask for some sort of grandparent visitation.

The circuit court entered its permanency order on January 25, 2021. It provided that: 1) "the permanency plan in the best interests of the infant children shall be to remain in the current placement of the foster home;" 2) the DHHR was moving forward "in arranging permanency for the children;" 3) the court would consider a motion for reconsideration if there was a change in housing for Petitioner; 4) the children have been residing in the foster home for five months and the court "would require reasons why permanency should be delayed to allow [Petitioner] to seek placement of the children;" 5) the court would seek the position of the GAL if Petitioner filed a motion for reconsideration; and 6) the court vacated its prior order requiring the DHHR to complete a home study "as [Petitioner] has no residence."

On March 18, 2021, Petitioner filed a motion for reconsideration of the court's permanency order. The circuit court held a hearing on this motion on April 9, 2021. Petitioner's counsel informed the court that Petitioner had obtained a residence and was requesting a home study because he wanted to be considered as a permanent placement option. The GAL objected to reopening the issue of permanency, stating:

I think the placement with [L.M.] is appropriate. I think the children have been there for a length of time and . . . just given the age of the children and the length of time they've been with [L.M.], the fact that the permanency consideration has already passed, I think their current placement is appropriate[.]

The circuit court noted its concern with the stability of Petitioner's residence and emphasized that its task was to find permanency for the children. Therefore, the circuit court denied Petitioner's request to reconsider the issue of permanency, finding that it was in the best interests of the children to remain with L.M. The circuit court entered its order denying Petitioner's motion to reconsider on May 14, 2021. After entry of the court's order, Petitioner filed the instant appeal.

This Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

With this standard in mind, we proceed to examine the parties' arguments.

On appeal, Petitioner argues that the circuit court abused its discretion by denying his motion for reconsideration without first holding an evidentiary hearing. Petitioner asserts that the lack of an evidentiary hearing resulted in the circuit court not being able to properly apply the grandparent preference statute or to consider the children's best interests. Further, Petitioner argues that the DHHR failed to comply with its duty, set forth in West Virginia Code § 49-4-601a (2020), to identify and inform the court of the identity of "relatives or fictive kin" who have expressed a willingness to take custody of a child.

Upon review, we find that the circuit court did not abuse its discretion by denying Petitioner's motion to reconsider. Petitioner's main argument flows from his contention that he was prejudiced by the lack of an evidentiary hearing accompanying his motion to reconsider. However, as this Court has stated on numerous occasions,

there is no provision for a motion to reconsider in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, Chapter 49 of the West Virginia Code, or the applicable West Virginia Rules of Civil Procedure. Accordingly, any alleged violation of due process based upon the lack of a hearing on such a motion is misplaced given that

4

> the circuit court had no duty to hold a hearing upon a motion for which the law does not provide.

*In re B.M.*, No. 19-1044, 2020 WL 3469725, at *5 (W. Va. June 25, 2020)(memorandum decision).[5]

Petitioner has not cited any authority that required the circuit court to hold an evidentiary hearing on his motion for reconsideration. While we recognize that the circuit court invited Petitioner to file a motion for reconsideration in the event that he obtained housing, the fact that the circuit court entertained the motion for reconsideration did not entitle Petitioner to an evidentiary hearing, nor does it entitle him to relief in this appeal. This Court addressed a similar scenario in *In re K.P.*, No. 20-0505, 2020 WL 7259205 (W. Va. December 10, 2020)(memorandum decision). In *K.P.*, petitioner great-aunt filed a motion to reconsider after the circuit court denied her motion to intervene in an abuse and neglect proceeding in which she was seeking placement of a child. This Court affirmed the circuit court's denial of her motion to reconsider, explaining that

> [d]espite the circuit court's consideration of petitioner's motion to reconsider, we have found that there is no provision for such a motion in Chapter 49 of the West Virginia Code or the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. . . . Accordingly, petitioner's motion to reconsider has no basis in law, and the fact that the circuit court considered petitioner's improper motion has no bearing upon this Court's determination that petitioner is entitled to no relief on appeal.

*Id.* at *2.

Even assuming, arguendo, the existence of a right to relief from the circuit court's ruling on the motion to reconsider, Petitioner has not demonstrated that his rights under the grandparent preference statute were violated. The grandparent preference statute is contained in W. Va. Code § 49-4-114(a)(3). It provides:

---

[5] *See In re M.W.*, No. 21-0950, 2022 WL 1115419, at *4 n.3 (W. Va. April 14, 2022)(memorandum decision) ("[T]his Court has repeatedly expressed[] there is no provision for a motion to reconsider in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, Chapter 49 of the West Virginia Code, or the applicable West Virginia Rules of Civil Procedure.") (Internal citation omitted).

For purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

This Court addressed the grandparent preference in *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005):

West Virginia Code § [49-4-114(a)(3)] provides for grandparent preference in determining adoptive placement for a child where parental rights have been terminated and also incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents. The statute contemplates that placement with grandparents is presumptively in the best interests of the child, and *the preference for grandparent placement may be overcome only where the record reviewed in its entirety establishes that such placement is not in the best interests of the child.*

By specifying in West Virginia Code § [49-4-114(a)(3)] that the home study must show that the grandparents "would be suitable adoptive parents," the Legislature has implicitly included the requirement for an analysis by the Department of Health and Human Resources and circuit courts of the best interests of the child, given all circumstances of the case.

*Id.*, Syl. Pts. 4 & 5 (emphasis added).

We have provided that "[t]he grandparent preference must be considered in conjunction with [this Court's] long standing jurisprudence that the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." *In re*

6

*Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (citation omitted). Additionally, "[t]he preference is just that—a preference. It is not absolute." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018).

When the circuit court entered its permanency order in January of 2021, placement with Petitioner was clearly not in the children's best interests because Petitioner was living in a homeless shelter. When the court considered the motion to reconsider in April of 2021, the children had been living with L.M. for approximately seven months and L.M. was preparing to adopt them. Moreover, both the DHHR and GAL agreed that it was in the children's best interests to deny the motion to reconsider because the children had found a stable home with L.M., and granting the motion would have delayed the children achieving permanency. Finally, the circuit court noted its concern with Petitioner's ability to provide stability for these children considering that he had recently resided in a homeless shelter for a number of months. The circuit court also noted its responsibility to achieve permanency for these children in a timely fashion. We have held that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. *Unjustified procedural delays wreak havoc on a child's development, stability and security.*" Syl. Pt. 1, in part, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) (emphasis added). We have also recognized "matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and *it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible.*" Syl. Pt. 5, in part, *Carlita B.* (emphasis added). Based on the foregoing, we find that the circuit court's denial of the motion to reconsider was in the best interests of the children because of the concern expressed by the circuit court as to the stability of Petitioner's residence, as well as the fact that the children had found stability in their placement with LM., and would achieve permanency through adoption by L.M.[6]

Petitioner's final argument is that the DHHR failed to contact him after the children were removed from their mother's custody to determine whether he was a placement option. The DHHR is required to search for relatives and "fictive kin" when a

---

[6] Petitioner asserts that "it was impossible" for the circuit court to determine which placement was in the children's best interests because the DHHR refused to conduct a home study after he obtained a home in March of 2021. We disagree. Petitioner was potentially entitled to receive a home study when the permanency hearing occurred in January of 2021. However, Petitioner did not have a home at that time. Therefore, a home study could not be completed. The issue of permanency was complete when the circuit court entered its permanency order on January 25, 2021. This Court has never held that a grandparent is entitled to receive a home study after a permanency order has been entered.

child is removed from their home pursuant to West Virginia Code § 49-4-601a. It provides, in relevant part:

> When a child is removed from his or her home, placement preference is to be given to relatives or fictive kin of the child. If a child requires out-of-home care, placement of a child with a relative is the least restrictive alternative living arrangement. The department must diligently search for relatives of the child and fictive kin within the first days of a child's removal and must identify and provide notice of the child's need for a placement to relatives and fictive kin who are willing to act as a foster or kinship parent.

W. Va. Code § 49-4-601a.

The DHHR concedes that it failed to comply with this statute in this case. Because the DHHR did not contact Petitioner, he was forced to file a motion to intervene and, he argues, the circuit court "used the passage of time of the children in the foster home as a factor against [Petitioner] in denying him placement of the children."

We find that the DHHR erred by failing to contact Petitioner as required by West Virginia Code § 49-4-601a. However, under the specific facts of this case, we find that this error was harmless. The purpose of this statute is to provide notice to relatives or fictive kin who are willing to act as foster or kinship parents. While Petitioner was not contacted by the DHHR, he became aware that the children had been removed from their mother's custody in November of 2020. He retained counsel and filed a motion to intervene at that time, which the circuit court granted. He participated in the January 6, 2021, MDT and expressed his desire to adopt the children. Crucially, Petitioner was able to fully participate in the permanency hearing that was held on January 22, 2021. During this hearing, Petitioner informed the circuit court that he was living in a homeless shelter. While the DHHR had an obligation to notify Petitioner that the children had been removed from their mother's custody, the undisputed evidence shows that Petitioner did not obtain a residence until March of 2021. Therefore, it would have been difficult for the DHHR to provide notice to him after the children were removed from their mother's custody. Moreover, even if the DHHR had contacted him in September of 2020, Petitioner would not have been a placement option because he did not have acceptable housing at that time. Therefore, we conclude that the DHHR's failure to comply with West Virginia Code § 49-4-601a was harmless.

Based on all of the foregoing, we affirm the circuit court's May 14, 2021, order denying Petitioner's motion to reconsider.

Affirmed.

**ISSUED**:  May 6, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn did not participate in the decision of this case.