**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.R.**

**No. 22-0032** (McDowell County 21-JA-7)

**MEMORANDUM DECISION**

Petitioner Grandmother P.V.[1] appeals the Circuit Court of McDowell County's December 15, 2021, order denying her permanent placement of A.R.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R.A.P. 21.

Petitioner is A.R.'s paternal grandmother and the adoptive mother of A.R.'s sibling, M.V.-1. Petitioner and her husband, J.V., adopted M.V.-1 in October of 2019, after the circuit court terminated the parental rights of petitioner's son ("M.V.-2") to M.V.-1. In February of 2021, the Department of Health and Human Resources ("DHHR") filed a petition alleging that A.R.'s mother abused controlled substances while pregnant with A.R. While the DHHR did not initially list M.V.-2 as a respondent, the petition was later amended to include him as a potential father of the child. Following A.R.'s birth, he was hospitalized for withdrawal symptoms for approximately two weeks. During this time, the DHHR approached petitioner regarding temporary placement of A.R., which she refused. Once A.R. was cleared for release from the hospital, he was placed with intervening foster parents where he remained throughout these proceedings.

On April 1, 2021, paternity testing confirmed that M.V.-2 was A.R.'s father. Thereafter, petitioner expressed interest in placement of A.R. and was granted visitation with the child in May of 2021. The parents' parental rights to A.R. were involuntarily terminated on June 24, 2021. On July 1, 2021, petitioner filed a self-represented motion requesting placement of A.R, which the circuit court construed as a motion to intervene in the proceedings. The foster parents also moved

---

[1]Petitioner appears by counsel Zachary K. Whitten. The West Virginia Department of Health and Human Resources appears by counsel Patrick Morrisey and Steven R. Compton. Intervening Foster Parents C.J. and K.J. appear by counsel Patricia Kinder Beavers. Malorie N. Estep-Morgan appears as the child's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R.A.P. 40(e). Additionally, as a child and her father share the same initials, we refer to them as M.V.-1 and M.V.-2, respectively.

to intervene. On August 6, 2021, the circuit court granted both motions and provided the parties leave to retain counsel or request appointed counsel. The circuit court held contested permanency hearings in October and November of 2021, at which petitioner appeared and was represented by counsel. The court heard testimony from an adoption specialist with the DHHR, a DHHR worker, the visitation provider, both foster parents, petitioner, J.V., and A.R.'s birth-to-three provider.

Ultimately, the circuit court concluded that permanent placement with the foster parents was in the child's best interests. In the order on appeal, the circuit court conducted a thorough review of the grandparent preference statute and this Court's prior holdings on that issue. The circuit court also noted the sibling preference contained in West Virginia Code § 49-4-111(e) and considered that the siblings, A.R. and M.V.-1, have had limited contact with each other throughout the proceedings. The court considered that petitioner initially declined placement of A.R. based upon the uncertainty of paternity. "However," the court found, "the fact remains it was either always known or should have [been] known by the paternal grandparents that [A.R.] was at least a half-sibling of their adoptive daughter [M.V.-1]." The circuit court reasoned that this Court disapproved of the "wait and see" approach to placement as utilized by the grandparents in *In re K.E.*, 240 W. Va. 220, 227, 809 S.E.2d 531, 538 (2018). Moreover, the court considered that paternity was established on April 1, 2021, "yet [petitioner] waited until a May 17, 2021, [multi-disciplinary team ("MDT")] meeting (following a May 3, 2021, MDT meeting) to inform [the DHHR] of her desire for placement of the child." Petitioner "further waited until July 1, 2021, to seek to intervene in this matter." The court reasoned that petitioner should have expressed her interest in placement of A.R earlier.

The circuit court also found it was undisputed that the grandparents were older individuals and suffering from certain health conditions. The court considered that petitioner had "great difficulty hearing" during the proceedings. It stated that it could not "ignore the reality that the respective ages of the paternal grandparents are an adverse factor when considering a viable long-term permanent placement option for [A.R.] when compared to the foster parents[,] who are in their early thirties." Further, the circuit court considered A.R.'s medical conditions, especially those that hindered his ability to breathe. The court found that both grandparents smoked and, although J.V. stated that he smoked only outside of the home, "the fact remains that second[]hand smoke (including residual smoke on the paternal grandparents' person and clothing) could only exacerbate the child's breathing condition." In support, the court cited testimony from the visitation provider, who stated she unplugged her vehicle's air freshener when transporting A.R. for the child's benefit due to his breathing issues.

The circuit court then considered that petitioner allowed M.V.-2 to visit with M.V.-1, despite the termination of his parental rights to two other children due to his "issues with domestic violence." The court noted that M.V.-2 had pending criminal charges for malicious wounding and domestic battery against S.R. and that a circuit court had affirmed the McDowell County Family Court's determination that M.V.-2 "had abused his then-wife." The circuit court considered prior testimony that M.V.-2 engaged in numerous instances of domestic violence against the mother and concluded that he had a violent propensity and suffered from substance abuse addiction, which threatened the welfare of A.R. The court further found that the grandparents' "permittance of [M.V.-2's] continued association and frequent contact with M.V.-1 clearly demonstrates a serious error in judgment and an extreme lack of insight into his unparalleled transgressions." The circuit

2

court was "deeply concerned that the paternal grandparents would fail to protect [A.R.] from [M.V.-2]. Any assertion to the contrary by the paternal grandparents is simply not credible." Moreover, the circuit court noted its concern that petitioner allowed her grandson, C.H., to live in her home, despite believing he was under the influence of controlled substances. It found petitioner's assertion that C.H. was "grown" and could reside in housing separate and apart from her was "far less than sincere" based upon petitioner bonding C.H. out of jail twice during these proceedings. Finally, the circuit court considered that the foster family provided A.R. with a stable, loving home and that a bond existed between the foster family and the child. It concluded that removing A.R. from this home "would have extremely devastating psychological consequences" for A.R., as well as the other children in the home.

Upon that reasoning, the circuit court concluded that the grandparent preference and sibling preference were overcome, as the record viewed in its entirety established that placement with the paternal grandparents was not in the child's best interests and that placement with the foster family was in the child's best interests. The court also ordered that supervised visitation between petitioner, M.V.-1, and A.R. continue on a monthly basis but that M.V.-2 not be permitted to attend visitations. The circuit court's December 15, 2021, order memorialized its decision, and petitioner appeals this order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner argues that the circuit court erred in denying her permanent placement of A.R. and challenges many of the circuit court's factual findings, including the finding that it was in A.R.'s best interest to be permanently placed with the foster parents rather than in petitioner's home. Petitioner relies on West Virginia Code § 49-4-114(a)(3), also known as the "grandparent preference" statute, which requires the DHHR to "first consider the suitability and willingness of any known grandparent or grandparents" when seeking an adoptive home for a child. Similarly, she points out that the Legislature also established a "sibling preference" in West Virginia Code § 49-4-111(e)(1), which requires the DHHR to "seek[] to enter into a foster care arrangement or seek an adoption which would unite or reunite siblings." However, this Court has held that "[t]he [grandparent] preference is just that—a preference. It is not absolute. As this Court has emphasized, the child's best interest remains paramount." *K.E.* at 225, 809 S.E.2d at 536. "The grandparent preference must be considered in conjunction with [the Court's] long standing jurisprudence that the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (internal quotation omitted).

Upon our review, we find that the circuit court's findings of fact were not clearly erroneous. First, the evidence clearly shows that petitioner initially declined placement of A.R. due to her belief that she was not the child's paternal grandparent, despite the fact that she was the adoptive mother of the A.R.'s half-sibling. Then, when it was determined that M.V.-2 was A.R.'s father, petitioner delayed informing the DHHR of her desire for placement of the child and further delayed intervening in the proceedings. We agree with the circuit court's finding that petitioner should have expressed an interest in placement of A.R. earlier given that petitioner knew the identity of the child's mother and knew that A.R. was M.V.-1's half-sibling.

3

The record further provides that A.R. had certain medical needs that require specialized care, including breathing complications, gastrointestinal issues, and acid reflux. The court correctly found that petitioner had no experience meeting these needs for A.R., though the foster parents did. Further, the court found that both petitioner and J.V. smoked, which would exacerbate A.R.'s condition, and both petitioner and J.V. admitted to failing to quit smoking in the past. To the extent that petitioner and J.V. testified that they could cease smoking, the court found that that testimony was not credible. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Most concerningly, the circuit court found that petitioner allowed M.V.-2 to visit M.V.-1, despite his numerous domestic violence incidents, propensity for violence, drug addiction, and suspected mental health issues. The circuit court correctly found that allowing this contact was a lapse in judgment on petitioner's part. It further found her testimony that she would prevent contact between M.V.-2 and A.R. to be not credible. Finally, the circuit court found that A.R. was bonded to the foster parents and that removing him from that family would result in psychological harm. Based on the totality of the circuit court's findings, we find no error in its conclusion that it was not in A.R.'s best interests to be adopted by petitioner with his sibling, M.V.-1, and that it was in his best interest to be adopted by the foster parents.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 15, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: October 26, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn