**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **W.H., J.H., I.H., and K.H.**

**No. 22-0366** (Webster County 19-JA-28, 19-JA-29, 19-JA-30, and 19-JA-32)

**MEMORANDUM DECISION**

Petitioner great-grandmother S.H.[1] appeals the Circuit Court of Webster County's April 8, 2022, order denying her permanent placement of W.H., J.H., I.H., and K.H.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Petitioner is the great-grandmother of W.H. and K.H. and has no family relation to J.H. and I.H. W.H. and K.H. are siblings and cousins to J.H. and I.H. Children W.H., I.H., and J.H. lived together prior to the filing of the petition, but K.H., who was born during the proceedings, lived for only a brief time with the other three children. Following the termination of the children's parents' parental rights,[3] petitioner retained counsel and moved to intervene in the proceedings and for permanent placement of the children in her custody in April of 2021.[4]

---

[1]Petitioner was represented by counsel below but is self-represented on appeal. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General James Wegman. Mary Elizabeth Snead appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3]The father of W.H. and K.H. voluntarily relinquished his parental rights in July of 2020. The circuit court terminated I.H.'s and J.H.'s respective fathers' parental rights in August of 2020, and those parties did not appeal the court's order. In September of 2020, the circuit court terminated the mothers' respective rights to all four children. The mothers appealed individually, and this Court affirmed the circuit court's decisions. *See In re W.H., J.H., I.H., and C.H.-1*, No. 20-0872, 2021 WL 1550227 (W. Va. Apr. 20, 2021)(memorandum decision); *see also In re J.H.*, No. 20-0873, 2021 WL 1550469 (W. Va. Apr. 20, 2021)(memorandum decision); *see also In re I.H.*, No. 20-0874, 2021 WL 1549685 (W. Va. Apr. 20, 2021)(memorandum decision).

[4]Originally, petitioner requested placement of only W.H. and K.H., but later amended her request for placement of J.H. and I.H. as well. Additionally, it does not appear from the record that the court ruled on petitioner's motion to intervene.

The circuit court held a final permanency hearing in July of 2021. Petitioner was present in person and represented by counsel. The court heard evidence that W.H. was blind and required medical care and that I.H. also required specialized medical care and "significant personal attention on a day-to-day basis." The court recounted that the children had been in multiple foster homes throughout the proceedings, but, as of late 2020, W.H., J.H., and I.H. were living in the same foster home. The infant, K.H., briefly lived in this home, but required removal due to an issue with an unrelated foster child. The guardian reported that the children were thriving in their current placements and that because W.H., J.H., and I.H. were raised together for a significant period of time, they shared a close bond. I.H., who was then thirteen years old, wished to remain in her current home, stating that she had only met petitioner on a few occasions. The guardian recommended that W.H., J.H., and I.H. remain in their current placement together. For K.H, the guardian recommended adoption in her current placement because she had no bond with the other children and her current placement would be the least disruptive.

The circuit court heard evidence that petitioner owned two homes that had been subject to DHHR home studies, referring to the residences as the "Hillsboro home" and the "Denmar home." Evidence showed that petitioner leased the Denmar home and that renters currently occupied that home. The DHHR approved the Denmar home for four children, contingent upon petitioner evicting the residents and making minor modifications to the home. The court found that petitioner lived in the Hillsboro home, which was only approved for two children. If granted custody of the children, petitioner intended to temporarily reside with all four children in the Hillsboro home while the Denmar home was vacated and improved. However, petitioner could not provide a timeframe for when she and the children would be able to move into the Denmar home. The court found that petitioner was unable to provide it definitive answers regarding her living situation, "essentially stating she would live where the [c]ourt told her."

Petitioner testified that she initially sought a home study of the Hillsboro home in November of 2020, following the termination of the children's mothers' parental rights. Petitioner requested a home study of the Denmar home only because she believed it was ready for the children. In petitioner's view, the Hillsboro home had sufficient room for the children, although she had not requested that the DHHR approve the home for all four children. Nevertheless, petitioner testified that she had plans to build an addition onto the Hillsboro home but could provide no details as to those plans. Petitioner, who was then seventy-three years old, believed that she could adequately care for the four children. She testified that she also had a support network. The court noted, however, that one of the individuals that petitioner named tested positive for controlled substances during the proceedings. Petitioner also named the children's aunt, J.C., who had previously intervened in the proceedings and who had withdrawn her request to take custody of the children after her home failed the DHHR home study due to pending criminal drug-related charges against her husband. Petitioner testified that she believed J.C. had a close bond with the children, and although she supported abiding by the court's order regarding contact with the parents, petitioner believed that J.C. should have "unfettered contact" with the children. Petitioner stated that the DHHR had treated J.C. unfairly and that it was not her fault that her home failed the DHHR home study.

2

The circuit court found that petitioner's testimony was "largely incredible and untrustworthy" based upon her body language and demeanor. The court found that petitioner provided inconsistent, vague, and evasive statements regarding her living arrangements, her contact with the children's mother, and her intentions regarding contact between the children and other interested parties, such as J.C. The court stated that petitioner was "very hesitant and delayed" when pressed on significant issues, "often sitting in silence for extended periods of time prior to provid[ing] a calculate[d] response."

The court was also suspicious of petitioner's motivation in requesting placement of all four children. The evidence showed that petitioner informed a DHHR worker earlier in the proceedings that she was "stepping aside" for placement in favor of J.C. The court found that it was not until after J.C. failed her home study that petitioner sought placement in earnest. Furthermore, petitioner had not requested visitation with the children throughout the proceedings. Based on petitioner's testimony and demeanor, the court was "firmly convinced" that petitioner had every intention of depending on the assistance of her adult children—whose home studies had been denied—to help her care for, or ultimately take placement of, the children. The court stated that "[i]t is patently obvious to this [c]ourt that despite [petitioner's] testimony she [was] either fully aware of the substance abuse and criminal issues of her adult children . . . and [was] simply trying to minimize the same," or "she [was] in denial about the seriousness" of her children's conduct. The court concluded that petitioner's desire for placement was "a ruse designed to commit a fraud upon this [c]ourt by obtaining custody of the children for the sole purpose of uniting them with [J.C.]" who petitioner "firmly believed should have placement of the children."

Regarding J.H. and I.H., the court found that petitioner had no relation to these children and, therefore, no placement preference applied. The court further found that petitioner lacked a significant bond with these children and that they were stable and thriving in their current placement. The court concluded that removing J.H. and I.H. from their current placement would be "completely contrary to their best interest" and denied petitioner's motion for placement.

Regarding W.H. and K.H., the court found that the grandparent preference, found in West Virginia Code § 49-1-114, applied. Nevertheless, the court ruled that it was not in either child's best interest to be placed with petitioner. First, the court considered the children's significant needs that were being met in their foster placements by an established team of specialists. In comparison, the court found that petitioner had offered no testimony as to how she would meet either child's special needs. Further, the court found no evidence of a bond between petitioner and the children. The court noted that petitioner did not request visitation with the children during the proceedings and had not visited with them since before the petition was filed in 2019. The court also considered petitioner's "glaring inaction" in the case, specifically that she waited until twenty months after the filing of the petition and seven months after her granddaughter's termination to move to intervene in the proceedings. The court coupled this inaction with petitioner's "voluntary abandonment of placement" in favor of J.C., finding that petitioner chose a "wait and see" approach to placement instead of actively seeking and maintaining a meaningful relationship with her great-grandchildren. Finally, the court reiterated its concerns regarding petitioner's motivation for seeking placement of the children and that petitioner would utilize her adult children for help with W.H. and K.H. Based on these factors, the circuit court denied petitioner's motion for permanent placement of the children as such placement would not be in their best interest. The

3

circuit court issued a comprehensive order on April 8, 2022, memorializing its decision. Petitioner now appeals that order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner argues that the circuit court erred in denying her permanent placement of the children and challenges several of the circuit court's factual findings. Petitioner relies on West Virginia Code § 49-4-114(a)(3), also known as the "grandparent preference" statute, which requires the DHHR to "first consider the suitability and willingness of any known grandparent or grandparents" when seeking an adoptive home for a child. At the outset, we must note that this Court has never determined that the grandparent preference statute applies to great-grandparents, and we decline to make a determination on this issue in the current matter. *See In re A.W.*, No. 13-0025, 2013 WL 2477295, at *3 (W. Va. June 10, 2013)(memorandum decision) (finding it unnecessary to address whether the grandparent preference applied equally to grandparents and great-grandparents because the circuit court determined the child's placement based on the child's best interest). As in *A.W.*, we again find it unnecessary to address the applicability of this preference because the court in this matter determined that placing the children in petitioner's care was not in their best interest. As this Court has held, "[t]he [grandparent] preference is just that—a preference. It is not absolute. As this Court has emphasized, the child's best interest remains paramount." *In re K.E.* 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). "The grandparent preference must be considered in conjunction with [the Court's] long standing jurisprudence that the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children." *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (internal quotation omitted). As such, the court's ruling that placement with petitioner would not be in the children's best interest is sufficient to overcome the grandparent preference, if it were to be applied to petitioner.

In challenging the circuit court's conclusion that it was not in the children's best interests to be placed in her care, petitioner specifically attacks the findings that she "backed away" from placement of the children, that her Hillsboro home was "inadequate" or "unfit" for the children, and that her testimony lacked credibility. Regarding credibility determinations, we have recognized that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Here, the circuit court viewed petitioner during her testimony and found her testimony to be highly suspicious and calculated. Although petitioner urges this Court to reach a different conclusion regarding her credibility, we decline to reconsider its assessment. We further find the circuit court's reasoning for denying petitioner placement of the children compelling. As the court found below, petitioner is unrelated to J.H. and I.H. and essentially has no bond with these children. The circuit court properly compared the two placements and concluded that it was in the children's best interest to remain in their placement, where they had been thriving and stable for multiple months. Regarding W.H. and K.H., the court correctly determined that it was not in these children's best interest to be placed in petitioner's care. The court properly weighed the bonding between the children and their current placements against the bonds with petitioner and the evidence of each placements' ability to care for the children's special needs. Additionally, the court's concerns about petitioner relying on individuals who had failed

home studies is well founded. Given the circuit court's determination that petitioner was either aware of these potential caretakers' substance abuse problems or minimized those problems, we agree with the circuit court's weighing of these factors against petitioner. After a thorough review of the record, we do not find that the circuit court's findings of fact or conclusions of law are clearly erroneous. Thus, we find no error on appeal.

Finally, petitioner argues that the circuit court erred in permitting bureaucratic delays that allowed the children to remain in the care of foster parents and to form bonds in that placement. In petitioner's view, her Hillsboro home passed its home study in November of 2020, and W.H. and K.H. should have been placed in her care at that time. However, the record provides that petitioner did not move for placement of the children until much later in the proceedings and did not object to the circuit court continuing the children's placement in November of 2020. Furthermore, the circuit court found that bureaucratic delays did not have a substantial impact on the proceedings. It noted that petitioner requested two DHHR home studies which "were timely completed despite [petitioner] waiting *nearly two years* after [the] filing of the petition . . . to intervene in this matter." Upon our review, we find no error in the circuit court's findings and conclude that any delay did not prejudice petitioner. [5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 8, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 7, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[5]In petitioner's fourth assignment of error, she alleges that the DHHR failed to investigate possible familial placements following the children's removal from the home. However, petitioner does not assert that she was aggrieved by this failure, arguing instead that J.C. and other family members were prejudiced. Petitioner lacks standing to defend the rights of these third parties, and we therefore decline to address this argument any further on appeal. *See Kanawha Cnty. Pub. Library Bd. v. Bd. of Educ.*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013) ("[C]ourts have been reluctant to allow persons to claim standing to vindicate the rights of a third party[.]") Similarly, in petitioner's fifth assignment of error, she argues that K.H. should have been placed in the care of K.C., who was a foster parent of the three older children. Petitioner does not have standing to challenge the placement for K.C. or assert any right on behalf of K.C.