IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

FILED

November 17, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-559

STATE OF WEST VIRGINIA EX REL. L.D.,
Petitioner,

v.

THE HONORABLE BRIDGET COHEE, JUDGE OF THE CIRCUIT COURT OF
BERKELEY COUNTY, T.D., K.E., M.C., S.C., AND THE WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN RESOURCES,
Respondents.

_____

Petition for a Writ of Mandamus

WRIT GRANTED
_____

Submitted: November 1, 2022
Filed: November 17, 2022

Jared M. Adams, Esq.
Adams Law Firm, PLLC
Martinsburg, West Virginia
Petitioner Guardian ad Litem

Patrick Morrissey, Esq.
Attorney General
Randy K. Miller, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent DHHR

Pamela Jean Games-Neely, Esq.
Kearneysville, West Virginia
Counsel for Respondent Mother K.E.

Michael Santa Barbara, Esq.
Martinsburg, West Virginia
Counsel for Respondent Father T.D.

Clinton R. Bischoff, Esq.
The Bischoff Law Firm PLLC
Shepherdstown, West Virginia
Counsel for Respondent Kinship Parents
M.C. and S.C.

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE HUTCHISON concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.     "A writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."  Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969).

2.     "In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions."  Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973).

3.     "Foster parents, pre-adoptive parents, or relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court.  Foster parents who have been granted the right to intervene are entitled to all the rights and responsibilities of any other party to the action."  Syl. Pt. 4, in part, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

i

4.      "Foster parents are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605([a]) (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required." Syl. Pt. 7, *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 815 S.E.2d 540 (2018).

WOOTON, Justice:

Petitioner Guardian ad Litem ("guardian") invokes this Court's original jurisdiction seeking a writ of mandamus to compel the Circuit Court of Berkeley County, West Virginia, to reunify the minor child, L.D., with the respondent parents, Mother K.E. and Father T.D. (collectively "respondent parents").[1]  Upon filing the underlying abuse and neglect petition, the West Virginia Department of Health and Human Resources ("DHHR") removed L.D. from Father T.D.'s home and placed her with cousins M.C. and S.C. (sometimes collectively "kinship parents").  The respondent parents successfully completed post-adjudicatory improvement periods and all parties recommended reunification of the family pursuant to West Virginia Code § 49-4-604(c)(1) (2022).  The circuit court declined to do so, stating that the child had been in "foster care" for more than fifteen months, and therefore the DHHR was required to move for termination of the parents' parental rights under West Virginia Code § 49-4-605(a)(1) (2018).  The court then sua sponte appointed counsel for and made the kinship parents parties to the underlying action, before directing that the child, respondent parents, and kinship parents undergo a "bonding assessment."  The guardian filed a petition for writ of mandamus with this Court seeking to compel the circuit court to reunify the family, and to remove the kinship parents'

---

[1] Consistent with our practice in cases involving sensitive facts, we use initials where necessary to protect the identities of those involved in this case.  *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

1

party status in the underlying action. Upon review of the parties' arguments, the appendix record, and the applicable law, we grant the writ of mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2021, the DHHR opened an investigation into potential child abuse after L.D. presented at Winchester Medical Center with various bruises.[2] The most concerning of these bruises were located on L.D.'s torso, which Father T.D. explained as having resulted from the child falling from his arms onto a tricycle while he was carrying her down a flight of stairs. A forensic nurse examined the bruising and the tricycle and determined that this explanation was plausible.

Subsequent to the investigation, Father T.D. and his then-girlfriend, A.S.,[3] admitted to engaging in excessive corporal punishment which caused some of the other bruises. Both also admitted to failing to seek prompt medical care for L.D. As a result of these admissions, on February 5, 2021, the DHHR filed the underlying abuse and neglect

---

[2] The underlying abuse and neglect petition also encompassed three additional children who are not parties to the instant petition. Those children were returned to the legal and physical custody of their biological mother A.S. and father D.S. upon A.S. and D.S. successfully completing their improvement periods. We note that A.S. is in a relationship with Father T.D.

[3] The appendix record is unclear regarding the present status of Father T.D.'s and A.S.'s relationship.

petition.[4]  Also on February 5, 2021, L.D. was removed from the home and placed with Father T.D.'s cousins, the kinship parents.

The parties appeared for an adjudicatory hearing before the Honorable R. Steven Redding on May 5, 2021.  At that time, Judge Redding informed the parties that he had a prior relationship with the kinship parents, as he had worked with them in a prior case where he served as a guardian ad litem.  None of the parties objected to Judge Redding's continuing to preside over this case.  Thereafter, the respondent parents admitted to the allegations of abuse and neglect and were accordingly adjudicated.

At a hearing on June 2, 2021, the circuit court granted the respondent parents post-adjudicatory improvement periods.  It is undisputed that the respondent parents successfully completed their improvement periods.  In fact, the circuit court described them as having "done extremely well" in this endeavor, and the record bears out that characterization.

Mother K.E. actively participated in the underlying proceedings, attending all MDT meetings and maintaining consistent contact with the DHHR.  She ceased using illegal drugs, and her drug screens have been consistently negative for some time.  She

---

[4] The abuse and neglect petition also alleged that Mother K.E. engaged in drug use (marijuana) that affected her parenting abilities and that she did not have stable housing or employment such that she could care for the child.

obtained and maintained employment, which resulted in her being able to secure stable housing appropriate for L.D.'s care. She also completed a psychological evaluation and subsequent individual counseling with the National Youth Advocate Program ("NYAP"), and on December 6, 2021, Mother K.E. completed parenting classes through Homebase.

Father T.D. similarly took an active role in the underlying proceedings. He maintained consistent contact with his caseworker and attended all multidisciplinary team ("MDT") meetings. He completed a psychological evaluation and subsequent counseling through both NYAP and Callahan Counselling Services. The record also indicates that he attended couples counseling with A.S. to rectify concerns about the stability of their relationship.[5] Moreover, Father T.D. completed thirty-two classes with Community Alternatives to Violence, and the court was informed by the program director that he actively participated in those classes and improved as a result of that participation. In November 2021, he also successfully completed parenting classes through Homebase— including classes specifically related to appropriate child discipline.

---

[5] It is apparent from the record that the circuit court had some concerns regarding this relationship, specifically A.S.'s interactions with the child, L.D. Early in the proceedings, L.D. was described as "fearful" of A.S, but the record indicates that this is no longer the case. We note that A.S. successfully completed her own improvement period and was dismissed from the case after being reunified with her biological children, and that she has been gradually, successfully reintroduced into L.D.'s life. No problems appear to remain in this regard.

4

Both respondent parents had visitation with L.D. throughout these proceedings. In the beginning, both participated in supervised visits with the child, and those quickly transitioned to unsupervised visits. By early 2022 the respondent parents were engaging in extended visits with the child—one day with Father T.D. and two days with Mother K.E.—including overnight stays. In May 2022, the circuit court increased these overnight visits to two nights with Father T.D., two nights with Mother K.E., and three nights with the kinship parents. The guardian's report indicates that L.D. enjoys spending time with her mother and father, and that she is bonded with both of them.[6]

Ultimately, on May 4, 2022, the circuit court held a dispositional hearing to consider disposition in this matter. At that hearing the DHHR, the guardian, and the Court Appointed Special Advocate ("CASA") volunteer all agreed that it was in L.D.'s best interest to be reunified with her parents, and accordingly recommended reunification and dismissal of the petition. The court, adhering to the statutory mandate that relative caregivers be afforded a meaningful opportunity to be heard, asked M.C. if he had anything he wished to add with regard to disposition. At that point, M.C. objected to reunification, arguing that L.D. was established in his home and had become bonded with his family. As a result of this objection, the court found that the disposition was contested, so Judge

---

[6] The parties' briefs further indicate that, after the court ordered a bonding assessment on June 16, 2022, discussed further *infra*, the existence of this bond has been reaffirmed.

5

Redding voluntarily recused himself from this matter and transferred the case to The Honorable Bridget Cohee.[7]

Judge Cohee held a scheduling hearing on June 16, 2022, at which time the DHHR, the guardian, and the CASA volunteer reiterated their recommendations that the child be reunified with her parents. The circuit court declined, over the objections of counsel, to order reunification at that time. Instead the court questioned whether reunification was in the child's best interest, and whether the DHHR was permitted to recommend reunification under West Virginia Code section 49-4-605(a)(1) because the child had allegedly been in "foster care" for fifteen of the last twenty-two months. Thereafter, the court sua sponte—and without a motion to intervene pending before the court—appointed counsel for and granted party status to the kinship parents. In so doing, the court opined that, because the child had been with them for fifteen months, the court "should give the folks who have been caring for the child counsel and an opportunity to be heard." The court also ordered that L.D., the respondent parents, and the kinship parents undergo a bonding assessment with a clinical psychologist. Immediately thereafter, the guardian filed the instant petition for writ of mandamus.

---

[7] *See* West Virginia Trial Court Rules 17.02 and 17.03 (permitting transfer of a matter in a multi-judge circuit upon voluntary recusal of the presiding circuit judge).

## II.     STANDARD OF REVIEW

This Court's standard for issuing a writ of mandamus is well-settled. "A writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969). With this standard in mind, we proceed to address the instant petition.

## III.  DISCUSSION

The guardian seeks a writ of mandamus compelling the circuit court to: (1) reunify L.D. with the respondent parents; and (2) remove the kinship parents from party status in these proceedings. To the first point, the guardian argues that the child has a clear legal right to be returned to her parents where the parents have corrected the conditions that led to the filing of the abuse and neglect petition. To the second, he argues that the kinship parents should not have been made parties to this action insofar as they never filed a motion to intervene and the circuit court lacks authority to sua sponte afford them party status. The DHHR and the respondent parents join in these arguments. The kinship parents, however, contend that the child has a deep emotional bond with them, such that reunification would not be in her best interest, and that the circuit court did not exceed its authority in making them parties to the action because it is "unreasonable" to expect the unrepresented kinship parents to have understood the need to file a motion to intervene.

7

Upon review of the parties' arguments and the applicable law, we agree with the guardian that the writ should issue.

### A. The circuit court erred in failing to reunify the family.

The first issue for our consideration is the circuit court's refusal to reunify L.D. with the respondent parents. By the court's own assessment, the respondent parents successfully completed their improvement periods and did "extremely well" throughout that process. In fact, the court even indicated that "we are nearly to the stage of [reunification] being granted[.]" Despite these acknowledgments, the court refused to reunify the family and instead further delayed permanency by ordering that the parties undergo a "bonding assessment." Having reviewed the court's order and the transcript of the June 16, 2022, hearing, we conclude that the court predicated this refusal almost exclusively on the fact that the child had been in the custody of the DHHR for "just over fifteen months" at the time of the hearing, such that the DHHR was "required" to move for termination of parental rights pursuant to West Virginia Code section 49-4-605(a)(1) (2018). The court's reliance on that statute is misplaced for several reasons, but the most significant of which is that the statute is simply inapplicable to the case at bar.

West Virginia Code section 49-4-605 states, in relevant part:

(a) Except as provided in subsection (b) of this section, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the

8

date of the first judicial finding that the child is subjected to abuse or neglect or the date which is sixty days after the child is removed from the home[.]

. . . .

(b) The department may determine not to file a petition to terminate parental rights when:

. . . .

(2) The department has documented in the case plan made available for court review a compelling reason. . .that filing the petition would not be in the best interests of the child[.]

*Id.* As a preliminary matter, we want to make clear that the circuit court's contention that the DHHR was "required" to file a petition to terminate parental rights here is incorrect. While it is true that the DHHR must file or join in a petition to terminate parental rights when the child has been in foster care for fifteen of the most recent twenty two months, *see* syllabus point four, *In re C.S.*, ___ W. Va. ___, 875 S.E.2d 350 (2022),[8] the statute provides three clear exceptions to that obligation, including where the DHHR has identified reasons

---

[8] We held in syllabus point four of *C.S.* that

> [p]ursuant to West Virginia Code § 49-4-605(a)(1) (2018), the Department of Health and Human Resources has a duty to file, join, or participate in proceedings to terminate parental rights when "a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home." West Virginia Code § 49-4-605(a)(1) (2018) does not relieve the Department of its burden of proof in abuse and neglect cases.

___ W. Va. at ___, 875 S.E.2d at 353.

why termination would not be in the child's best interest. Here, the DHHR identified such reasons in the case plan, in the court summary, and in arguments to the court when it recommended reunification of the family.

Beyond this, even if the DHHR had not identified any reasons for finding that termination was not in L.D.'s best interest, section 49-4-605 does not apply because fifteen months had not passed at the time the recommendation to reunify the family was made. At the June 16, 2022, hearing the circuit court determined that the child had been with the relative caregivers for fifteen months. Our review, however, reveals this was not correct. The earliest determination that the child was subject to abuse and neglect was made on February 5, 2021. The various parties recommended reunification on May 4, 2022. That is, by our calculation, just under the fifteen-month threshold. The delay between the May 4 hearing and the June 16 hearing cannot be attributed to the respondent parents. Instead, it is solely attributable to the circuit court due to Judge Redding's recusal and transfer of this matter to Judge Cohee. We have made clear that procedural delays of this kind cannot work to the detriment of the persons seeking custody of the child, in this case the respondent parents. *See In re J.P.*, 243 W. Va. 394, 844 S.E.2d 165 (2020) (declining to attribute procedural delays to the party seeking custody).[9]

---

[9] Given our determination that West Virginia Code section 49-4-605(a)(1) was inapplicable because the requisite time threshold had not passed, this Court need not reach the question of whether that statute applies when a child is in a relative or kinship placement. *See, e.g., In re H.W.*, ___ W. Va. ___, 875 S.E.2d 247 (2022) (Walker, J.,

The only remaining question, then, is whether the circuit court had *any* justification in the law for so failing to reunify the family. Our review leads us to conclude that it did not.

One of the most fundamental principles of law that this Court has recognized is that

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). Of course, we have also made clear that this right is not absolute, as it is necessarily limited by the parent's fitness to care for the child. *See* Syl. Pt. 2, *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352 (2013) ("'Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.' Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).").

Even so, the Legislature and this Court have made clear that abuse and neglect proceedings are, first and foremost, remedial in nature. This is more than apparent from the consistent emphasis the Legislature places on "reunification" throughout Chapter

---

concurring) (analyzing the Legislature's amendments to Chapter 49 of the West Virginia Code distinguishing between foster care and kinship placement).

11

49 of the West Virginia Code. *See, e.g.*, W. Va. Code § 49-4-604(a)(2) ("The [permanency] plan must document efforts to ensure that the child is returned home within approximate time lines for reunification as set out in the plan."); *Id*. § 49-4-604(c) (giving precedence to reunification and dismissal of the petition in dispositional decisions); *Id*. § 49-4-604(c)(6) (requiring findings regarding the DHHR's efforts to "preserve the family. . .or. . . to make it possible for the child to safely return home"); *Id*. § 49-4-604(c)(7)(enumerating the limited circumstances in which the DHHR is not required to make reasonable efforts to reunify the family)*; see also* W. Va. R. P. Child Abuse & Neglect Proc. 28(b)(2) (requiring the case plan to include a description of the DHHR's efforts to reunify the family).

To effectuate this reunification, the court has discretion to grant offending parents improvement periods, which allows the parents to engage in conduct—including participation in services provided by the DHHR—geared toward remediation and reunification. W. Va. Code § 49-4-610 (2015); *W. Va. Dept. of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990) ("The improvement period is granted to allow the parent an opportunity to remedy the existing problems. . .the ultimate goal is restoration of a stable family environment[.]"). Here, it is undisputed that the respondent parents successfully completed their respective improvement periods; indeed, they did so well the circuit court acknowledged that they had excelled in their efforts. Moreover, there are no facts indicating that the respondent parents engaged in other behaviors that would preclude reunification. While we have long recognized that "judgment regarding the

12

success of an improvement period is within the court's discretion regardless of whether or not the individual has completed all suggestions or goals set forth in the family case plans," *In Interest of Carlita B.*, 185 W. Va. 613, 626, 408 S.E.2d 365, 378 (1991), the circuit court was unable to identify any aspect of the improvement period in which the parents failed to succeed. Accordingly, there is no evidentiary basis supporting the court's denial of reunification at the time of either the May 4, 2022, hearing or the June 16, 2022, hearing.[10]

Based on the foregoing, we grant the requested writ of mandamus and order the circuit court to reunify L.D. with the respondent parents. Consideration may be given to the need for a gradual transition in accordance with the Court's holding in *In re Hunter H.*, 227 W. Va. 699, 715 S.E.2d 397 (2011), but we note that the gradual transition already

---

[10] To the extent the circuit court asserted that a bond may have formed between L.D. and the kinship parents, that bond alone is not sufficient to prevent reunification with the natural parents who have a constitutional interest in parenting their child. *See J.P.*, 243 W. Va. 394, 844 S.E.2d 165 (reversing placement of a child with foster parents with whom he had bonded instead of with paternal grandfather for whom there was a statutory preference). That said, we recognize that a child may develop a significant bond with the persons with whom they are placed, as that is the natural course of early childhood development. The Legislature is also cognizant of that fact and has created a mechanism to protect the child's interests in that regard while also allowing for reunification with the natural parents. *See* W. Va. Code § 49-2-126(a)(11) (2022) (contemplating that a child has a right to continued contact with previous caregivers); *see also* Syl. Pt. 11, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996) ("A child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child.").

began prior to the May 4, 2022, hearing, and therefore the process should be expedited as much as practicable to prevent further delays which are harmful to the child.

***B. The circuit court exceeded its authority in joining the kinship parents as parties absent a motion to intervene.***

The remaining issue for this Court's consideration is the circuit court's sua sponte joinder of the kinship parents as parties to this action. While it is not entirely clear upon what authority the circuit court acted, we presume the court sought to add the kinship parents as intervenors under West Virginia Code section 49-4-601(h) (2022). As discussed below, this was error on the court's part.

Before we delve into the analysis of this issue, it bears repeating that the kinship parents never filed a motion to intervene in the proceedings below. While this Court has acknowledged that "the West Virginia Rules of Civil Procedure regarding intervention generally do not apply to abuse and neglect proceedings under Chapter 49[,]" the rules are instructive in our analysis. *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 736 n.12, 815 S.E.2d 540, 547 n.12 (2018). In that regard, what is clear from the West Virginia Rules of Civil Procedure is that no party may intervene—whether permissively or as of right—unless they do so "upon timely application," meaning by filing a motion. W. Va. R. Civ. P. 24. The only scenario in the civil context in which the *court* may add a party sua sponte is via joinder, which requires either: (1) that complete relief cannot be accorded amongst the existing parties in that person's absence; or (2) that the person to be joined

14

claims an interest relating to the subject of the action that would be impeded if the person were not joined or would result in inconsistent obligations for the existing parties. *Id*. at Rule 19.

There is no direct counterpart to mandatory joinder in the abuse and neglect context, and the closest corollary is found in West Virginia Code section 49-4-601(b), which sets out the list of persons who *must* be named in the abuse and neglect petition. Aside from the children, that list is limited to "each parent, guardian, custodian, other person standing in loco parentis of or to the child allegedly neglected or abused[.]" *Id*. The language of the statute makes clear that those are persons who had custody of the child prior to the filing of the petition, because it further requires allegations in the petition as to whether those persons have abused or neglected the child. *Id*.

Notably absent from that list of persons who are *required* to be made parties are foster parents, kinship parents, relative caregivers, and pre-adoptive parents. Rather, those persons are statutorily afforded a different status in abuse and neglect proceedings. West Virginia Code section 49-4-601(h) states that

> [i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, pre-adoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

*Id*. This Court has explained that this statute creates a two-tiered framework:

15

> Parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." In contrast, however, "[f]oster parents, preadoptive parents, and relative caregivers" are only granted the right to a "meaningful opportunity to be heard." Moreover, for purposes of this statute, the term "custodial" refers to a person who became a child's custodian "*prior* to the initiation of the abuse and neglect proceedings[.]"

*State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018) (internal citations omitted). In short, those persons enumerated in section 49-4-601(h) have certain rights, but are not mandatory parties to the abuse and neglect petition.

Even so, we have explained that those persons may become parties by filing motions to intervene in the proceedings. Specifically, we have held that

> [f]oster parents, pre-adoptive parents, or relative caregivers who occupy only their statutory role as individuals entitled to a meaningful opportunity to be heard pursuant to West Virginia Code § 49-4-601(h) (2015) are subject to discretionary limitations on the level and type of participation as determined by the circuit court. Foster parents who have been granted the right to intervene are entitled to all the rights and responsibilities of any other party to the action.

*C.H.*, 240 W. Va. at 732, 815 S.E.2d at 542, syl. pt. 4, in part. Moreover, "[f]oster parents are entitled to intervention as a matter of right when the time limitations contained in West Virginia Code § 49-4-605([a]) (2017) and/or West Virginia Code § 49-4-610(9) (2015) are implicated, suggesting that termination of parental rights is imminent and/or statutorily required." *Id.*, syl. pt. 7.

16

As explained *supra*, M.C. and S.C. are not foster parents; they are kinship parents or relative caregivers. As kinship parents, they were not entitled to intervene as a matter of right under syllabus point seven of *C.H.*. 240 W. Va. at 732, 815 S.E.2d at 542. Had they filed a motion to intervene—which they did not—the intervention would have been permissive and within the discretion of the circuit court. In the absence of a motion, however, there was no mechanism by which the court could grant them intervenor status, and we conclude that the circuit court erred by sua sponte elevating the kinship parents to party status in the proceedings below.[11] Accordingly, we grant the writ of mandamus and order the circuit court to remove M.C. and S.C. from party status in these proceedings.

## IV. CONCLUSION

For all the foregoing reasons, we conclude that the minor child, L.D., and her parents have a clear legal right to reunification, and there is no other adequate remedy available. Moreover, the circuit court has a clear legal duty to order that reunification. *See State ex rel. Kucera*, 153 W. Va. at 539, 170 S.E.2d at 367, Syl. Pt. 2. Accordingly, we grant the guardian's requested writ of mandamus and order that the circuit court commence the reunification between the child and her parents immediately upon remand. That process is to be expedited as much as is practicable, giving due regard to the possible need

---

[11] Because we find that the kinship parents should have never been made parties to this action, it is equally clear that they should not have been appointed counsel. W. Va. Code § 49-4-601(f)(8) (permitting sua sponte appointment of counsel to "any unrepresented *party*")(emphasis added).

17

for a gradual transition period for the child from the kinship parents' home to the respondent parents' homes. Further, we conclude that the circuit court did not have authority to sua sponte join the kinship parents as parties to this action. For that reason, we direct that the circuit court remove the kinship parents' party status in these proceedings. The Clerk is hereby directed to issue the mandate of the Court contemporaneously with this opinion.

Writ Granted.